UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JOSEPH KAUFFMAN, ) | |
| ) | Civil Action No. 2:09-1399-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PARK PLACE HOSPITALITY GROUP ) | **ORDER AND OPINION** |
| (D/B/A HOLIDAY INN) and ) | |
| RIVERVIEW HOSPITALITY, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Joseph Kauffman filed the within action in the Charleston County Court of Common Pleas on March 25, 2009 against Defendant Park Place Hospitality Group ("Park Place") alleging negligence related to injuries Plaintiff sustained from a fall at a hotel. On May 28, 2009, this case was removed to federal court. On June 5, 2009, Plaintiff filed an amended complaint adding Riverview Hospitality, LLC ("Riverview") as a defendant. This case is before the court on Park Place and Riverview's (collectively "Defendants") motion for summary judgment. On March 15, 2011, the court held a hearing on Defendants' motion for summary judgment as well as four pre-trial motions. At the hearing, the court denied a motion to exclude the testimony of Defendants' expert Alan Campbell "Campbell," and determined that additional briefing was necessary to rule on Defendants' motion for summary judgment. All briefs have since been filed and the court rules as follows.

**FACTS**

**I.    The Incident**

The uncontradicted facts in the light most favorable to Plaintiff are as follow. The Holiday Inn Riverview hotel (hereinafter "the hotel") was constructed in Charleston South Carolina in 1971. Entry 93-1 at 2. The original building permit is also dated 1971. *Id.* Riverview has owned the hotel since 2000. McCauley Dep. 8:17-17, 9:16-18. Riverview employs Park Place to manage the hotel. *Id.* 9:19-21. Plaintiff was staying at the hotel in March 2006 to attend a conference and for vacation. Kauffman Dep. at 20:10-13, 21:9-12. For most of the week he was at the hotel, Plaintiff was traveling back and forth to the conference and spending time downtown with his wife in the evenings. *Id.* at 25:19-25. When exiting the hotel, Plaintiff would go out the front doors and down a ramp to the right. *Id.* at 27:10-14, 28:6-8.

On March 30, 2006 at around 5:30 p.m., Plaintiff and his wife were leaving the hotel to take a shuttle downtown for dinner. Kauffman Dep 30:3-5, 31:22-24. As Plaintiff and his wife exited the front door, they saw the shuttle in the driveway of the hotel. *Id.* at 31:1-2. Plaintiff walked down the ramp towards the shuttle and, at the bottom of the ramp, Plaintiff's "legs went out from under [him] and [he] fell." *Id.* at 31:3-6. Plaintiff "tried to grab a railing" as he fell, but there was no railing at the end of the ramp. Plaintiff "fell on [his] [left] shoulder," injuring the shoulder and also skinning his left knee. *Id.* at 31:6-9, 31:10-11, 45:14-15, 45:20-22. Plaintiff never fully recovered the function of his left shoulder. *Id.* at 53:6-14. The ramp and railing at issue were part of the original construction of the hotel in 1971. Campbell Aff. ¶ 10, Mar. 29, 2011.

**II.     Building Codes**

The 1955 National Building Code (1955 Building Code) was adopted by the City of Charleston in 1964 and remained in effect until 1975. Entry 93 at 2-3. Section 607 of the 1955 Building Code which provides the code's requirements with regard to ramps states: "Ramps used in place of stairways shall be constructed and enclosed as required for the stairways displaced. Ramps used in exits [sic] ways shall have a slope not to exceed 1 floor in 10 feet and shall be provided with non-slip surfaces." Entry 93-5 at 7. The 1955 Building Code contains some handrail requirements for internal stairways, but not for external stairways. *See* Entry 93-5 at 6-7.

The 2003 International Building Code ("2003 Building Code") was adopted by the state of South Carolina for use in all municipalities and counties on March 26, 2004, and implemented on January 1, 2005. Entry 92 at 3. Section 101.2 of the 2003 Building Code states: "The provisions of this code shall apply to the construction, alteration, movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure or any appurtenances connected or attached to such buildings or structures." Entry 92-6. Section 3401.2 of the 2003 Building Code provides: "Devices or safeguards which are required by this code shall be maintained in conformance with the code edition under which installed." Entry 93-6 at 3.

Section 1009.11 of the 2003 Building Code governs handrails and requires that all handrails for ramps required by Section 1010.8 comply with this section. Entry 92-3 at 1. Section 1010.8 of the 2003 Building Code requires that "[r]amps with a rise greater than 6 inches (152 mm) shall have handrails on both sides complying with Section 1009.11." Entry 92-2 at 1. Section 1009.11.5 governs handrail extensions and requires that: " Where handrails are not continuous between flights,

the handrails shall extend horizontally at least 12 inches (305 mm) beyond the top riser and continue to slope for the depth of one tread beyond the bottom riser." Entry 92-3 at 2.

Section 101.4.5 of the 2003 Building Code provides in relevant part: "The Provisions of the International Property Maintenance Code shall apply to existing structures and premises. . . ." Entry 92-6 at 1. Section 101.3 of the 2003 Maintenance Code provides:

> This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein. Repairs, alterations, additions to and change of occupancy in existing buildings shall comply with the International Existing Building Code.

Entry 92-7 at 9. Section 304.12 of the 2003 Maintenance Code, which governs external handrails and guards states that handrails shall "be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition." Entry 92-7 at 18. Section 306 of the 2003 Maintenance Code requires that handrails be at least 30 inches high, but no more than 42 inches high. Entry 92-7 at 19.

Both parties have submitted documentation indicating that South Carolina considers the International Property Maintenance Code to be a "permissive code" that may be used by a local jurisdiction, but "must first be adopted by ordinance before enforcement can begin." Entries 92-1 at 2, 93-9 at 2. The 2003 Maintenance Code has never been adopted by Charleston County or the City of Charleston. Campbell Aff. ¶ 18, Mar. 29, 2011.

**DISCUSSION**

I.    **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.* Summary judgment should only be granted in those cases where it is clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Tr. of Maryland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992).

II.   **Negligence Claim**

To establish negligence, a party must prove the following three elements: 1) a duty of care owed by the defendant to the plaintiff; 2) breach of that duty by a negligent act or omission; and 3) damages proximately resulting from the breach of duty. *Fowler v. Hunter*, 697 S.E.2d 531, 534 (S.C. 2010).

A.    Duty

Defendants contend that Plaintiff has failed to show that Defendants owed a duty to Plaintiff. Entry 71-1 at 5. Plaintiff contends that Defendants had a duty to keep their premises up to the proper

5

code.  Entry 73 at 5.

"Whether [a] defendant is under a legal duty to [a] plaintiff is a question of law for the court[.]" *Sharpe v. S.C. Dep't of Mental Health*, 354 S.E.2d 778, 781 (S.C. Ct. App. 1987)(Bell, concurring)(citing *Rogers v. Atl. Coast Line R.R. Co.*, 71 S.E.2d 585 (S.C. 1952)).  Generally speaking, "[a]n affirmative duty exists only if imposed by statute, contract, relationship, status, property interest, or some other special circumstance." *Carolina Chem., Inc. v. S.C. Dep't of Health and Env. Control*, 351 S.E.2d 575, 578 (S.C. Ct. App. 1986).  "The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Harris v. University of South Carolina*, No. 4789, 2011 WL 382448, *3 (S.C. Ct. App. Feb. 3, 2011)(citing *Sims v. Giles*, 541 S.E.2d 857, 862 (S.C. Ct. App. 2001).  "[A]n invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there." *Singleton v. Sherer*, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008) (citing *Bryant v. City of N. Charleston*, 403 S.E.2d 159, 161 (Ct. App. 1991)).  Consistent with their duty to business invitees, Defendants have a duty to comply with the applicable building code.  *See Truncellito v. Carroll's Florist Corp.*, 903 N.Y.S.2d 659 (N.Y. Sup. Ct. 2010) (Building Code, which has all the force of a statute in New York creates a duty); *Olsen v. Auto-Owners Ins. Co.*, 143 Wis. 2d 899 (Table), 1988 WL 48079, *1 (Wis. Ct. App. 1988) (testimony of expert witness that building code regulations required extension of staircase handrails twelve inches past the top stair showed duty to have handrail extension).

The parties disagree as to which building code is applicable in this case.  Plaintiff contends that the applicable building code on the date of the incident was the 2003 Building Code.  Entry 92 at 3.   Plaintiff further contends that the 2003 Building Code incorporates and requires

implementation of the provisions of the 2003 Maintenance Code. Entry 92 at 4.

Defendants contend that the applicable building code is the 1955 Building Code because the building, including the ramp and railing in question, were constructed during the time the 1955 Building Code was in effect. Entry 93 at 2-3. Defendants argue that the 2003 Building Code does not apply because the ramp and railing were existing structures that were not altered during the time between their original construction and the date of the incident. Entry 93 at 3-6. Defendants contend that the 2003 Maintenance Code is inapplicable because it is considered a "permissive code" under South Carolina law and has not been adopted by either the City of Charleston or Charleston County. Entry 93 at 6.

Sections 101.2 and 101.4.5 of the 2003 Building Code demonstrate that the 2003 Building Code does not apply to existing structures unless alterations are performed. Defendants' expert Campbell found that the ramp and handrail were not altered between the time of construction and the incident. Campbell Aff. ¶ 10, Mar. 29, 2011. Plaintiff has not submitted any evidence to the contrary. Therefore, there court concludes that the 2003 Building Code is not applicable to the ramp and handrail at issue.

The issue then becomes whether or not the 2003 Maintenance Code applies. Section 101.4.5 of the 2003 Building Code indicates that the 2003 Maintenance Code applies to existing structures. Entry 92-6 at 1. However, because South Carolina considers the International Property Maintenance Code to be a "permissive code" and Plaintiff has submitted no evidence that this code was ever adopted by a local ordinance, the court finds that 2003 Maintenance Code does not apply in this case. Because there is no evidence that the ramp and handrail have been altered since they were constructed in 1971, when the 1955 Building Code was in effect, the court finds, consistent with

Section 3401.2 of the 2003 Building Code, that the 1955 Building Code is the applicable code.

B.     Breach of Duty

Defendants contend that Plaintiff has failed to provide evidence of a breach of duty because there is no evidence that Defendants created a dangerous condition, or knew a dangerous condition existed. Entry 71-1 at 5. Defendants specifically contend that the handrail at issue met the requirements of the 1955 Building Code. Entry 93 at 3. The court agrees.

Whether Defendants' breached their duty of care is a question of fact. *See McVey v. Whittington*, 151 S.E.2d 92 (1966). To prove negligence in a slip and fall case, a plaintiff must show that the defendants either created a hazardous condition or had notice of it. *Shain v. Leiserv, Inc.*, 493 S.E.2d 111, 112 (S.C. Ct. App. 1997) (citing *Cook v. Food Lion*, 491 S.E.2d 690 (S.C. Ct. App. 1997).

The applicable sections of the 1955 Building Code do not set out any handrail requirements for ramps external to a building. *See* Entry 93-5 at 6-7.[1] As a result, the handrail at issue did not violate the 1955 Building Code. In addition, Plaintiff has submitted no evidence that the ramp violated any of the requirements of the 1955 Building Code. Because the ramp and handrail at issue did not violate the requirements of the applicable building code, the court concludes that Defendants

---

[1] The court notes that even if the 2003 Maintenance Code were applicable, there is no evidence that the ramp or handrail in place at the time of the incident violated the requirements of this Code. First, to the extent that Plaintiff is attempting to use the statement in the commentary to the 2003 Building Code that "[f]alls are the leading cause of nonfatal injuries in the United States," Entry 92-4 at 1, to show that the lack of a twelve inch handrail extension was "unsafe" in violation of Section 101.3 of the 2003 Maintenance Code, this argument is without merit. Section 101.3 of the 2003 Maintenance Code only requires repairs and alterations to provide a minimum level of health and safety as required within the other sections of the 2003 Maintenance Code. There is no evidence in the record that the handrail did not conform with the requirements of the 2003 Maintenance Code. Specifically, there is no evidence in the record that the handrail in question was not firmly fastened, capable of supporting normally imposed loads, properly maintained, or was an improper height. *See* 2003 Maintenance Code Sections 304.12 and 306, Entry 92-7 at 18-19.

did not create or have notice of a hazardous condition. Plaintiff has not shown a genuine issue of material fact with regard to Defendants' breach of their duty to keep the hotel in compliance with the applicable building code. Defendants' motion for summary judgment is therefore granted.

## CONCLUSION

Defendants' motion for summary judgment (Entry 71) is granted.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

April 7, 2011
Columbia, South Carolina